UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re

FRANCIS GROUP HOLDING CORP.,

Debtor.

Chapter 11

Case No. 10-43296 (JF)

**INTERIM STIPULATED ORDER WITH J.P. MORGANCHASE AUTHORIZING DEBTOR TO USE RENTS, PROFITS AND INCOME FROM PROPERT~~Y~~IES COMMONLY KNOWN AS 394 RUTLAND ROAD, BROOKLYN, NEW YORK AND 287 CLARKSON AVENUE PURSUANT TO 11 U.S.C. § 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001**

This Interim Stipulated Order (the "*Stipulation*" or "*Order*") is made by and between Debtor Francis Group Holding Corp. ("*Francis Group*" or "*Debtor*") and J.P. Morgan Chase Bank, N.A. (the "*Lender*"), in order to avoid immediate and irreparable harm to Debtor's estate, and is an interim stipulation only, pending a final hearing on Debtor's right to make use of the rents, profits and income identified below.

Debtor has requested that Lender consent to the use of certain rents, profits and income generated in connection with the operation of two parcels of real property, and improvements thereon, located in Kings County, New York, the legal descriptions of which are contained in **Exhibit A** attached hereto, and which are commonly known as 394 Rutland Road, Brooklyn, New York (the "*Rutland Premises*") and 287 Clarkson Avenue, Brooklyn, New York (the "*Clarkson Premises*", and together with the Rutland Premises, the "*Premises*"). Debtor has further requested that Lender consent to the Debtor's use of the Premises and to the use of certain personal property located at, or utilized in connection with the operation of the Premises (the "*Personal Property*"). Lender has so consented, on terms and conditions as set forth herein.

{10566045:4}

The Parties having agreed to the entry of this Order, the relief granted hereby, and the terms and conditions set forth herein, and on the basis of representations made and any evidence presented to the Court and upon the record in these Chapter 11 proceedings, the Court finds and determines that it is in the best interests of Debtor's estate and its creditors, and that there is good cause to grant the relief herein provided. The Court finds that absent the relief provided herein, and in particular the authority herein granted to Debtor to use cash collateral, Debtor's estate would suffer immediate and irreparable harm. The Court finds that the notice hereof having been provided and sent is, under the circumstances, adequate and sufficient and complies with the requirements of sections 102(1) and 363 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Rules**"), and any notice periods in excess thereof are hereby shortened to conform to the notices given herein. The parties agree and the Court further finds that the Parties have acted in good faith with respect to this Order and that the relief requested and the terms and conditions set forth herein are proper, lawful, and in the best interests of Debtor's estate and its creditors.

## Recitals

A.  On April 16, 2010 (the "***Petition Date***"), Debtor commenced this voluntary case under chapter 11 of the Bankruptcy Code.

B.  Debtor is currently in possession of the Clarkson Premises and of the Personal Property. A Receiver appointed by the New York State Supreme Court is currently in the process of turning over possession of the Rutland Premises to the Debtor.

C.  The Lender asserts that Debtor is indebted to Lender for certain indebtedness and obligations (the "***Indebtedness***") on two separate loans: (i) a Note dated January 25, 2007 executed and delivered by the Debtor to the Lender to evidence indebtedness of $320,000.00

plus interest secured by a Mortgage on the Clarkson Premises, and (ii) a Note dated January 25, 2007 executed and delivered by the Debtor to the Lender to evidence indebtedness of $480,000.00 plus interest secured by a Mortgage on the Rutland Premises. The certain documents that created, evidence, or secure the Indebtedness, together with any documents referred to therein or which were executed pursuant thereto, are herein referred to collectively as the "**Loan Documents**".

D. The Lender asserts that the Indebtedness is secured by various liens, pledges, assignments, mortgages, and security interests described and granted or conveyed in or evidenced or perfected by one or more of the Loan Documents (the "**Liens**") in, to, and against all of Debtor's assets, including, but not limited to, liens, pledges, assignments, mortgages, and security interests in, to, and against the Premises and the Personal Property, (the Premises, the Personal Property, and all other items and types of property are hereinafter collectively referred to as the "**Collateral**").

E. The Lender asserts that the Liens were granted, conveyed, and perfected by certain of the Loan Documents.

F. The term "**Collateral**," as used herein, in addition to the above-referenced property, shall also include, inter alia, "**Cash Collateral**" as that term is defined in the Bankruptcy Code, including, without limitation, Bankruptcy Code § 363. Cash Collateral, as that term is defined in the Bankruptcy Code, including, without limitation, Bankruptcy Code § 363, includes, but is not limited to, all of Debtor's prepetition and post-petition cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash, cash equivalents, proceeds, products, rents, or profits derived from the premises or any other property subject to the Liens, including all prepetition and post-petition rents, leases, accounts, accounts

receivable, and proceeds derived from the premises. All Cash Collateral is subject to the Liens, and Lender has an interest in Cash Collateral.

G. The Lender asserts that as of the Petition Date, the Liens are first priority liens as to all the Collateral.

H. On April 20, 2010, the Debtor moved for authority to use Cash Collateral (the "*Motion*"), and thereafter requested that the Lender consent pursuant to Bankruptcy Code § 363(c) to the limited use of the Cash Collateral in accordance with the following terms.

I. The Debtor has agreed to grant to the Lender as adequate protection for the use of Cash Collateral, a post-petition security interest in and to all property arising from the Premises, and an allowed administrative expense claim in an amount not greater than the un-repaid Cash Collateral used by the Debtor.

J. Debtor and Lender, without waiving any rights between them, desire that the rents, income and profits from the Premises[1] be used to preserve and maintain the Premises and the Personal Property, in accordance with the terms of this Stipulated Order.

K. This Court has jurisdiction with respect to Debtor's proposed use and expenditure of such rents, profits and income pursuant to 28 U.S.C. Sections 157 and 1334.

L. Due and adequate notice of the hearing on the Motion to use Cash Collateral has been provided to Debtor's 20 largest unsecured creditors and to the United States Trustee, in accordance with Rule 4001(b).

## **Stipulation and Order**

---

[1] For purposes of this Stipulation, the parties are using the phrase "rents, profits and income" to signify income of all types generated in connection with the operation of the Premises (the "*Rents*")**.**

Accordingly, Debtor and Lender hereby stipulate as follows, and IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. <u>Expenses</u>. Debtor may use Cash Collateral of the Lender to pay for the ordinary and necessary post-petition operating expenses as categorized in the proposed monthly budget attached to the Debtor's Motion and as attached hereto as **Exhibit B** (the "***Budget***"). Ordinary and necessary post-petition expenses shall be defined as those items set forth in the monthly Budget and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than ten percent (10%). The Debtor shall obtain the Lender's written permission before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Accounts, as hereinafter defined, in excess of ten percent (10%). If the Debtor and the Lender cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of the Lender for expenses not included in the categories included in the proposed monthly Budget, the Debtor may submit the matter to the Court by motion for determination of the issue if the Lender fails to respond to a written request within five (5) business days after such written request is received by the Lender and the Lender's counsel, or the Lender denies a written request within five (5) business days after such written request is received by the Lender and the Lender's counsel. Lender's Cash Collateral shall not, directly or indirectly, be used to pay professional administrative expenses of the Debtor.

2. <u>Operating Budget</u>. To the extent the Debtor seeks to modify the Budget, beginning on the 15th day of the month after this Order is granted and continuing on the 15th day of each month thereafter, Debtor shall deliver a proposed monthly budget in the form of Exhibit B (each, a "***Monthly Budget***") to Lender that sets forth all anticipated monthly post-petition revenues and expenses that will be paid in the operation of Debtor's business during the next

successive month. Each Monthly Budget shall be delivered to Lender on or before the 15th day of the month prior to the month for which the Monthly Budget is proposed. After receipt of each Monthly Budget, Lender shall have five business days to approve or object to the Monthly Budget. Any objection by Lender shall be in writing and shall specify the particular item(s) and amount(s) objected to and reasons for the objection. If Lender timely objects to a Monthly Budget or item or amount therein, unless Debtor and Lender agree otherwise, Debtor may not make any expenditure of the Rents objected to by Lender unless and until Debtor obtains the Court's authorization to make such expenditure (the Monthly Budgets approved by Lender or so approved by the Court over Lender's objections being referred to herein as the "Approved Monthly Budgets"). Debtor may seek authority to make such expenditures on an expedited basis.

3. No Cash Collateral shall be used in payment of any kind whatsoever to Debtor (except as may be provided in the annexed Budget), or the relatives of the principals or any of their representatives, or any insiders as that term is defined by Bankruptcy Code § 101(31).

4. The Debtor shall not make any capital improvements to the Premises absent prior written consent of the Lender.

5. <u>Adequate Protection Liens</u>. As adequate protection to the Lender for the Debtor's use of the Lender's Cash Collateral, and to protect Lender against any diminution in the value of its Collateral (including Cash Collateral), Lender is hereby granted a valid, binding, enforceable and perfected continuing replacement first-priority lien and security interest in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents, income and profits of the Debtor, arising from the Premises, including all post-petition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds thereof, of any

kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by Lender on the Filing Date, whether or not constituting pre-petition collateral or post-petition collateral (collectively referred to herein as the "***Estate Collateral***"). Such lien is subject only to: (i) the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) any valid, duly perfected, unavoidable liens existing at the time of the Bankruptcy filing having priority over the liens asserted by Lender under the Mortgage; and (iii) the maximum sum of $5,000.00 for the commissions, fees and expenses of any chapter 7 trustee appointed in this case, <u>provided</u>, <u>however</u>, that none of those funds may be used to challenge or object to Lender's claims and liens, and <u>provided further</u>, that Lender has no liability for or obligation to advance such funds. Notwithstanding the foregoing, the Debtor and Lender acknowledge that the continuing replacement first-priority lien and security interest described in this provision shall not attach to any avoidance actions or claims or causes of action under Bankruptcy Code §§ 544, 545, 547, 548 and 549 (except liens on recoveries under section 549 on account of collateral as to which the Lender has a post-petition lien), and the proceeds thereof, or a super-priority administrative claim payable from the proceeds of such claims and causes of action.

6. <u>Security Interest</u>. This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the Estate of the Debtor granted to Lender as set forth herein, without the necessity of filing, recording or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this Stipulation and the Loan Documents. If Lender shall, in its discretion, elect for any reason to file any such security interests and liens, the Debtor is hereby authorized and directed to execute, or cause to be

executed, all such financing statements or other documents upon Lender's request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Filing Date. Lender may, in its discretion, file a copy of this Stipulation in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Stipulation.

7. So long as this Order is in effect, Debtor shall not grant or attempt to grant to any person or entity, other than Lender, a security interest in or lien on the Premises or any property that secures the Indebtedness, whether pursuant to Bankruptcy Code § 364 or otherwise.

8. Debtor waives any and all right to assess, against Lender, the Premises, or any assets of Debtor that secure the indebtedness owed by Debtor to Lender, any costs or expenses of preserving or disposing of the Premises or such assets, whether pursuant to Bankruptcy Code § 506(c) or otherwise.

9. <u>Administrative Expense</u>. As additional adequate protection to the Lender for the Debtor's use of the Lender's Cash Collateral, and to protect Lender against any diminution in the value of its Collateral (including Cash Collateral), Lender is hereby granted an allowed administrative expense claim in an amount not greater than the un-repaid Cash Collateral used by the Debtor.

10. <u>Financial Reporting</u>. As additional adequate protection, Debtor shall provide to Lender, no later than the 20th day of each month:

   a. all reports and documents required to be filed with the Office of the United States Trustee for the previous month;

    b. a report of cash collections, outstanding accounts receivable, and expenditures as of the end of the previous month;

    c. an inventory report showing changes in inventory as of the end of the previous month; and

    d. an income and expense statement.

The foregoing reporting requirements shall supplement and be in addition to those financial reporting requirements contained in the Loan Documents (as hereinafter defined), all of which shall remain in full force and effect during the course of this Chapter 11 case, and with which Debtor shall comply during the course of this Chapter 11 case.

    11. <u>Additional Financial Reporting</u>. As additional adequate protection, Debtor shall within 20 days after the end of each month, commencing on or before **May 20, 2010,** provide to Lender a report showing the actual revenues and expenses for that month. The report shall list such items in the same manner as set forth in the Approved Monthly Budget in order to permit a comparison of such actual revenues and expenses for the applicable month with the budgeted amounts for such revenues and expenses for the applicable month.

    12. <u>Adequate Protection Payments</u>. (a) As additional adequate protection, Debtor shall pay to Lender on a monthly basis, the difference between the total expenses on the Premises less the net ordinary income, as those terms are used in the Budget. The first such payment shall be due on May 15, 2010, with subsequent payments due on the 20th day of each month (or, if that date for any given month falls on a day other than a business day, the next business day following the 20th day of such month) during the period in which this Order remains in effect. (b) All payments that the Debtor is required to pay to the Lender hereunder must be made by check payable to "JPMorgan Chase Bank" and delivered by U.S. Postal Service

or overnight delivery service so that the are received by the Lender on or before the dates required herein, addressed as follows: JPMorgan Chase, Attention: Katrin Franz, Asset Manager, 3929 West John Carpenter Freeway, Irving, Texas 75063.

13. <u>Lender's Inspection and Access Rights</u>. Upon reasonable notice to Debtor, Debtor shall permit Lender and Lender's agents reasonable access to the Premises and to the books and records of Debtor.

14. <u>Cash Collateral Accounts</u>. The Debtor shall immediately set up and maintain separate and segregated account for all revenue generated by the Collateral for the Rutland Premises and a separate and segregated account for all revenue generated by the Collateral for the Clarkson Premises, which segregated accounts shall include all gross revenue and cash collateral existing as of the Petition Date, or collected since the filing of this bankruptcy case (the "Cash Collateral Accounts"). The Cash Collateral Accounts shall be set up and maintained with the Lender. Information regarding the Cash Collateral Account, including the Lender name, the address and the account numbers will be provided to the Lender by the Debtor immediately upon execution of the Stipulation. The Debtor agrees to disburse funds from the Cash Collateral Account only in accordance with the terms of this Stipulation.

15. The Debtor is prohibited from commingling the Cash Collateral with monies from any other sources. Cash collateral is to remain in the Cash Collateral Accounts until expended under the terms of the Stipulation.

16. <u>Effective Period</u>. This Order shall remain in effect until the final hearing of the Debtor's Motion for use of Cash Collateral, or until further Order of this Court, but the rights and interests granted to Lender under this Order, specifically including the rights and interests of Lender and waivers by Debtor under paragraph 8, are continuing. Nothing in this paragraph 15

prohibits Lender in any manner from seeking termination of the automatic stay under Bankruptcy Code § 362 or any other relief to which Lender may believe it is entitled, including any relief which would result in the cessation of Debtor's use of the Rents and/or termination of the effects of this Stipulated Order. The Lender expressly reserves its right to claim and assert that it is not adequately protected by this Stipulation. The Debtor is estopped from claiming, asserting, or arguing that the Lender's willingness to enter into this Stipulation is evidence of adequate protection under Bankruptcy Code §§ 361 or 362.

17. <u>Binding on Successors and Assigns</u>. The provisions of this Stipulated Order shall inure to the benefit of Debtor and Lender, and they shall be binding upon the Debtor and its successors and assigns, including any trustee or any other representative now or hereafter appointed as a legal representative of Debtor, this Estate or any Estate under any other chapter of the Code (following conversion of this case or otherwise), shall be binding on Lender and its successors and assigns, and shall be binding on all creditors and other parties in interest.

18. Lender shall be entitled to seek the protection of Bankruptcy Code § 363(a) with respect to diminution of Lender's Collateral in the event that its Collateral decreases in value during the pendency of this Chapter 11 Case, in the event that this Stipulation or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

19. <u>Survival of Provisions</u>. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to one under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this

Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Stipulation until all indebtedness due Lender is indefeasibly satisfied and discharged.

20. **Debtor in Possession**. Debtor shall continue to operate its business in the ordinary course of business and in accordance with the provisions of this Stipulated Order and the Code.

21. **Relationship Between Debtor and Lender**. The Lender is not an insider of the Debtor. The Lender contends that no basis exists on which to avoid or disallow all or any portion of the Lender's claims or liens. Accordingly, the Debtor believes that the Debtor and the Lender have negotiated in good faith within the meaning of Bankruptcy Code § 363(m). Any subsequent modification, *vacatur* or stay of the Order regarding the Stipulation shall not effect the validity or enforceability of any security interest, lien or priority authorized or created by such Order prior to the effective date of such modification, stay, *vacatur* or final order.

22. **Insurance**. The Debtor shall maintain property, casualty, and liability insurance coverage as provided in the Mortgage in connection with the Collateral. Debtor shall promptly furnish the Lender with proof of such insurance. In the event that the insurance coverage for the Collateral is allowed to lapse for any reason, Debtor agrees that the Lender may, notwithstanding any applicable provision of the Bankruptcy Code, force-place insurance coverage. The Debtor further agrees that in the event that the Lender is required to obtain force-placed insurance coverage, the Lender may provide the Debtor with a demand to reimburse the Lender for such coverage, and if, five (5) business days following the receipt of such notice, the Debtor has not reimbursed the Lender for such insurance coverage, the Lender may seek relief, on five (5) days notice from the Bankruptcy Court, from the automatic stay of Bankruptcy Code § 362(a) to commence and complete foreclosure of the Collateral.

23. <u>Taxes</u>.  The Debtor shall remain current on all post-petition tax obligations arising out of its ownership and/or operation of its business.  Debtor agrees that evidence of payment of all post-petition tax obligations shall be tendered immediately to Lender upon the payment thereof.  In the event that Debtor fails to make any required post-petition tax payment, the Lender may advance such funds and seek immediate reimbursement from Debtor notwithstanding any applicable provision of the Bankruptcy Code.  In the event that the Lender advances such tax payments and Debtor does not reimburse the Lender within five (5) business days of having received notice thereof, the Lender may proceed on five (5) days notice for relief from the automatic stay of Bankruptcy Code § 362(a), to commence and complete a seizure of the Collateral.

24. <u>Termination</u>.  Additionally, unless the Lender otherwise agrees in writing, the termination date of this Stipulation ("***Termination Date***") shall be defined as the earliest of:  (a) the date an order is entered by the Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Code; (b) the date an Order is entered by the Court granting the Lender, or any other Creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against the Collateral; (c) the date an order is entered by the Court granting a motion to dismiss the above-captioned case; (d) the date an order is entered by the Court granting a motion to appoint a trustee in the above-captioned case; (e) the date on which the order approving the Stipulation is reversed, revoked, modified, amended, stayed, rescinded or supplemented; (f) the date on which the Debtor shall grant or file an application or motion with the Court for approval of any security interest in or lien on the assets of the Debtor or its estate senior to the Lender's security interest in or lien on the assets of

the Debtor or its estate senior to the Lender's security interest or liens other than the security interest and liens created by the order approving this Stipulation.

25. Charges. The rights of the Lender to continue to charge the Debtor with interest, reasonable fees and expenses as provided in the Note for the period covered by this Stipulation, and of the Debtor to object, are preserved. During the term of this Stipulation, the Debtor shall fully perform and comply with all of its covenants and agreements set forth in the Loan Documents, which are hereby reaffirmed and ratified by the Debtor.

26. Lender's Rights. Nothing contained herein shall affect or impair the rights, claims or remedies of the Lender or the Debtor under the Bankruptcy Code, or otherwise, including the Lender's right to seek relief from the automatic stay under Bankruptcy Code § 362.

27. The Lender shall have the right to waive any of the rights, remedies, or powers granted in the Stipulation and the Order hereon. Delay in or failure to exercise any of the Lender's rights, remedies or powers shall not subject the Lender to liability or a waiver of any such rights, remedies or powers in the future.

28. Default. Failure by the Debtor to fulfill any of the obligations set forth in this Stipulation shall constitute an event of default ("*Event of Default*"), including, but not limited to, making all payments set forth in paragraph 11 herein. Should an Event of Default occur, Lender may file and serve by mail or by facsimile, if such facsimile number is available, an affidavit (the "*Lender Affidavit*"), identifying the Event(s) of Default, upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case (the "*Appearing Parties*"). The Debtor shall have five (5) business days to either cure the Event of Default or the Debtor or any other party provided with notice in accordance to this decretal paragraph may file a counter-affidavit (the "*Counter-Affidavit*") opposing the allegations raised in the Lender

Affidavit with specificity. If (a) a Counter-Affidavit is filed, or (b), within five (5) business days after the service of the Lender Affidavit, the Debtor fails to cure the Event of Default or (c) if the Debtor or any of the other Interested Parties fail to serve upon counsel for Lender a Counter-Affidavit and file the Counter-Affidavit with the Court, then a hearing will be scheduled at the earliest possible convenience of the Court on no less than two (2) business days written notice to the Debtor, Lender, the Appearing Parties, and the Office of the U.S. Trustee (the "***Interested Parties***") to determine whether an Event of Default has occurred and whether Lender is entitled to terminate the Debtors use of cash collateral. Nothing contained herein shall be construed to preclude Lender from filing a motion seeking relief from the automatic stay or from seeking any other appropriate relief in the Debtors' Bankruptcy cases at any other time during this Case.

29. The parties agree that time is of the essence with respect to all terms and conditions of this Stipulation.

30. <u>Final Order</u>. Debtor's immediate ability to use the Rents is necessary to avoid immediate and irreparable harm to the Premises and to the Debtor's estate. In order to avoid immediate, irreparable harm to the estate, and pending a final hearing under Rules 4001(b) and (d), this Order shall be considered to be an order pursuant to Rule 4001(b)(2) authorizing the use of Rents as allowed under, and subject to, the terms and provisions of this Order between the Petition Date and the earliest of the conclusion of such final hearing, the Termination Date, or further Order of the Court.

31. <u>Final Hearing</u>. The Final Hearing to consider the Debtor's Motion for use of Cash Collateral will be held on June 24, 2010 at 10:00 a.m. before The Honorable Jerome Feller, in his Courtroom at the United States Bankruptcy Court for the Eastern District of New York,

271 Cadman Plaza East, Brooklyn, New York 11201.

>
> WINDELS MARX LANE & MITTENDORF, LLP
>
> By: _s/Leslie S. Barr_____
> Leslie S. Barr (lbarr@windeslmarx.com)
> Robert G. Wilk (rwilk@windelsmarx.com)
> 156 West 56th Street
> New York, New York 10019
> Tel. (212) 237-1000
> Fax (212) 262-1215
>
> *Counsel for Lender, JPMorgan Chase Bank, N.A.*
>
> BACKENROTH FRANKEL & KRINSKY LLP
>
> By: _s/Mark A. Frankel_____
> Mark A. Frankel (mfrankel@bfklaw.com)
> 489 Fifth Avenue, 28th Floor
> New York, New York 10017
> Tel. (212) 593-1100
> Fax (212) 644-0544
>
> *Counsel for Francis Group Holding Corp., Debtor and Debtor in Possession*

**SO ORDERED**
Brooklyn, New York
May 18, 2010

s/Jerome Feller
United States Bankruptcy Judge